**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 05-cv-00824-WYD-CBS

PAUL FOX

      Plaintiff,

v.

LINDA HINRICHS, as Adams County, Colorado Zoning Inspector,

      Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

Magistrate Judge Craig B. Shaffer

      The matter before the court is Defendant Linda Hinrichs' "Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1) and (6)" [#4], filed on June 8, 2005.  Plaintiff filed his Response [#7], on June 23, 2005.  Defendant filed her Reply [#8], on July 8, 2005. Further before the court is Defendant's "Motion to Stay Discovery on Grounds of Governmental Immunity" [#5], filed on June 8, 2005.  Plaintiff has not filed a response to this motion.  A Memorandum [#6], filed on June 8, 2005, referred both of these motions to the Magistrate Judge for determination.

      The court has reviewed the Motion to Dismiss, the Response and the Reply to that motion, Defendant's "Motion to Stay Discovery on Grounds of Governmental Immunity," the exhibits, the entire case file, and the applicable law and is sufficiently advised in the premises.  For the reasons discussed below, it is recommended that the Motion to Dismiss be granted, and that this civil action be dismissed with

prejudice.  It is further recommended that "Defendant's Motion to Stay Discovery on Grounds of Governmental Immunity" be denied as moot.

**I.      Background.**

        This action is brought by Plaintiff, who appears *pro se,* against Defendant Linda Hinrichs ("Defendant"), an Adams County Zoning Inspector employed in the County's Public Works Department.  Plaintiff's Complaint stems from the clean up of his property on May 7, 2005, which occurred pursuant to Adams County Ordinance Number 3 for the Prevention of Environmental Blight ("Blight Ordinance").   Plaintiff claims that Defendant, acting in her official capacity, obtained an Administrative Entry and Seizure Warrant from a Adams County Court Judge.  He claims that warrant was obtained "upon false information."  On May 7, 2005, Defendant executed the warrant by coming onto Plaintiff's property.  Plaintiff claims that Defendant seized property which was not listed in the warrant and which was the Plaintiff's personal property, which included a trampoline, a riding lawnmower, a fiberglass tub which Plaintiff claims he was planning on installing in the home, a spray gun and high pressure hoses, lumber, and "other valuable personal property which could not be classified as junk or trash."  ***Compl., p.3.*** Additionally, Defendant seized political signs which Plaintiff had in his backyard.   Plaintiff claims none of the property was visible from the street.  Further, Plaintiff claims that all of the property was deposited in a dump and destroyed.

        Plaintiff's Complaint alleges five claims for relief.  The First and Third Claims

are for alleged violations of the Fifth Amendment for deprivation of property and liberty without due process.  The Second Claim is for an alleged violation of the Equal Protection Clause of the Fourteenth Amendment.  The Fourth Claim is for an alleged violation of Plaintiff's First Amendment rights.  The Complaint asserts these constitutional violations against Defendant in her official capacity only.  The Fifth Claim is a supplemental state tort claim for outrageous conduct.

## II.      Standard of Review.

Since Plaintiff appears *pro se,* this court will construe liberally his pleadings and other papers, holding them to a less stringent standard than formal papers filed by attorneys.  **Hall v. Bellmon,** 935 F.2d 1106, 1110 (10th Cir. 1991).

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  **FED. R. CIV. P. 12(b)(6).**  When reviewing a Rule 12(b)(6) motion to dismiss, the court accepts the well-pleaded allegations of the complaint as true and construes them in a light most favorable to the Plaintiff. **Ramirez v. Dep't of Corrections,** 222 F.3d 1238, 1240 (10th Cir. 2000) (citation omitted).  The court should not dismiss a complaint under Rule 12 (b)(6) "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  **Ramirez,** 222 F.3d at 1240 (quoting **Conley v. Gibson,** 355 U.S. 41, 45-46 (1957)).

## III.     Analysis.

Plaintiff brings his constitutional claims (claims One-Four) under **42 U.S.C. §**

**1983.**  Under **42 U.S.C. § 1983**, Plaintiff must establish "(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.  ***Summum v. City of Ogden,*** 297 F.3d 995, 1000 -1001 (10ᵗʰ Cir. 2002); ***Gomez v. Toledo***, 446 U.S. 635, 640 (1980).

     **A.**     **First Claim and Third Claims: Fifth Amendment:**

Plaintiff claims that he was deprived of his Fifth Amendment rights guaranteed by the United States Constitution in violation of **42 U.S.C.A. § 1983.**  He claims that Defendant's seizure of certain personal property items wrongfully deprived him of due process pursuant to the Fifth Amendment of the United States Constitution. **(Plaintiff's First Claim).**  Plaintiff also claims that Defendant's actions deprived him of a liberty interest protected by the Fifth Amendment of the United States Constitution. **(Plaintiff's Third Claim for Relief).**

The Due Process Clause of the Fifth Amendment provides, in pertinent, part that "[n]o person shall ... be deprived of ... liberty, or property... without due process of law...".  **U.S. Const. Amend. V.**  The due process protection of the Fifth Amendment has two components, a substantive due process component and a procedural due process component. ***See United States v. Salerno***, 481 U.S. 739, 746 (1987). The substantive due process component precludes the government from engaging in conduct that "shocks the conscience" or interferes with rights "implicit in the concept

4

of ordered liberty." *Id.* (citations and quotations omitted).  The procedural due process component precludes the government from depriving a person of life, liberty, or property in an unfair manner.  *See Mathews v. Eldridge,* 424 U.S. 319, 335 (1976). Substantive and procedural due process claims must be supported by an underlying liberty interest.  *See Fristoe v. Thompson,* 144 F.3d 627, 630 (10th Cir.1998).  A liberty interest can arise in one of two ways: (1) from the Due Process Clause itself; or (2) from a state or federal statute. *See id.*  Any due process analysis must begin with a "careful description of the asserted right." *Reno v. Flores,* 507 U.S. 292, 302 (1993). Based on Plaintiff's Complaint, it appears as though he is asserting procedural due process claim for an alleged deprivation of his property (First Claim) and liberty (Third Claim) interests.

### 1.    *Property:*

Plaintiff asserts in his First Claim that his personal property was taken without due process of law.  *Compl. ¶ 14.*  In determining what process is due prior to deprivation, courts must balance (1) the private interests that will be affected by the official action, (2) the risk of erroneous deprivation, and (3) the government's interest, including the fiscal and administrative costs of additional process. *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976).

As to the first factor, the private interest here is Plaintiff's loss of his personal property, including a trampoline, a riding lawnmower, a fiberglass tub which Plaintiff claims he was planning on installing in the home, a spray gun and high pressure

hoses, lumber, and non-posted political signs.   Depending on the form of personal property involved, personal property interests can be substantial.   ***See Sutton v. City of Milwaukee,*** 672 F.2d 644, 645-47 (7th Cir.1982) (because automobiles occupy central place in lives of Americans, Plaintiff had substantial interest in prompt hearing on whether car was seized without probable cause); ***cf. Cleveland Bd. of Educ. v. Loudermill,*** 470 U.S. 532, 542 (1985) (interest in retaining employment until hearing "compelling"); ***Mackey v. Montrym,*** 443 U.S. 1, 2, (1979) (Plaintiff's interest in continued possession and use of driver's license, pending outcome of hearing, not compelling in light of further post-suspension hearing and limit of 90-day suspension).   None of the items at issue here can compare to the significance of one's automobile or job.   Further, Plaintiff does not provide any support for his suggestion that his interest in retaining his personal property is compelling.

As to the risk of erroneous deprivation, the Blight Ordinance requires pre-deprivation notice to the property owner and establishes a  procedure for obtaining an administrative entry and seizure warrant from a county or district court.  The county or district court may issue, *ex parte,* an administrative entry and seizure warrant upon presentment of a copy of the county blight ordinance, a sworn affidavit stating the factual basis for the warrant, evidence that the property owner was given notice of the violation and failed to remove the rubbish, and a general description of the property and the contents to be removed.  Costs associated with a county-initiated cleanup, if not paid by the property owner after notice, are to be charged as a priority lien on the

property.

Under the terms of the ordinance, the Adams County Public Works Department sends a letter via first class mail to the owner of record for the property at issue. The letter states that the owner has fourteen days to respond, via an enclosed form, and request a formal sufficiency hearing in the civil division of the County Court for Adams County. The owner only has to return the enclosed form to the Public Works Department. The burden then shifts to the County to file the appropriate request with the court, and to set the matter for an immediate pre-deprivation due process hearing. Absent such a request from the owner, the Public Works Department may, *ex parte,* request an administrative entry and seizure warrant from the Adams County Court, upon presentment of a sworn affidavit, and evidence of the mailing of the notice. Pursuant to the statute, the Public Works Department must execute on the warrant within ten days of issuance. ***See*** § **30-15-401(1)(a)(I)(A), C.R.S.** Because Plaintiff received both notice and a hearing opportunity, the risk of erroneous deprivation of his property was minimal. ***See Herrada v. City of Detroit,*** 275 F.3d 553 (6th Cir.2001); ***Horn v. City of Chicago****,* 860 F.2d 700 (7th Cir.1988).

As for the third factor, the Court must consider both the government interest in the policy that the state action advances and the government interest in minimizing administrative and fiscal burdens. ***Mathews****,* 424 U.S. at 335. Here, the Blight Ordinance advances a policy for the abatement of rubbish, trash, weeds, and other debris --a policy which directly serves the government interest in health and welfare.

7

*See Chernin v. Welchans*, 844 F.2d 322, 329 (6th Cir.1988) (government has substantial interest in ensuring adequate housing conditions).   *See* § **30-15-401(a)(1)(I)(A), C.R.S.**

Further, Adams County reduces the administrative and fiscal burdens of enforcement by providing a hearing only when a homeowner requests one.  It does not specifically stipulate that the hearing must include the opportunity to be heard, present evidence, cross-examine adverse witnesses and contest adverse findings.  However,  the due process clause requires an opportunity for a hearing appropriate to the nature of the case. ***Mullane v. Cent. Hanover Bank & Trust Co.,*** 339 U.S. 306, 313 (1950).

In support of his claim, Plaintiff claims that the warrant was obtained "upon false information," but Plaintiff does not allege what that false information was, or whether it was material.  The Blight Ordinance enforcement process allows Plaintiff to raise this challenge in a due process format.  Plaintiff does not claim that the warrant was found invalid by the Adams County Court, or that he ever challenged the warrant before that court.  Further, despite Plaintiff's failure to avail himself of it, Plaintiff was provided with adequate due process prior to any alleged property deprivation.  Plaintiff admits that he received notice required by the Blight Ordinance and that he failed to request a due process hearing.  Plaintiff states that he believed he was in compliance with the Blight Ordinance.  By not requesting a hearing, Plaintiff gambled that the County would agree with his conclusion that he was in compliance.  However,

because Plaintiff failed to use the due process protections available to him, Plaintiff cannot now sustain a deprivation of due process challenge. Plaintiff does not set forth an actionable claim that on its face the Blight Ordinance violates his constitutional rights by depriving him of his personal property without procedural due process of law. Further, consideration of the *Matthews* factors weighs in favor of dismissing Plaintiff's claim. Therefore, Plaintiff's First Claim should be dismissed.

### 2. Liberty:

Plaintiff argues in his Third Claim that as a result of Defendant's actions he was deprived of a liberty interest protected and guaranteed by the Fifth Amendment. Plaintiff claims that while executing the warrant at issue, Defendant took pictures of a car that was located in Plaintiff's backyard. Defendant then used that information to bring a court action against Plaintiff, asserting a claim for a continuing violation of a prior administrative proceeding that had been closed. Plaintiff was prosecuted and found guilty and had to pay a $250.00 fine. Plaintiff claims that he was deprived a liberty interest.

However, "to obtain a protectable right 'a person clearly must have more than just an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.' " *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 7 (1979) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Here, it is unclear what protectable right of Plaintiff's was allegedly violated. According to the facts as Plaintiff

9

presents them, Plaintiff's property was searched pursuant to a warrant. Although he now questions the validity of the warrant, he did not avail himself of the available procedures at the time the warrant was executed. During the execution of that warrant, the Defendant viewed evidence in plain sight that implicated a criminal zoning violation. Plaintiff's liberty interests as protected by the Fifth Amendment do not reach Defendant's actions. Even if Plaintiff's liberty interests had been implicated by Defendant's actions, Plaintiff had available to him a due process procedure prior to any alleged deprivation. Therefore, Plaintiff's Third Claim should be dismissed.

**B.      Second Claim for Relief: Equal Protection:**

To establish an equal protection violation under § 1983, Plaintiff must show that he is a member of a protected class and that Defendant purposefully discriminated against him because of his membership in that class. **Brown v. Millard County,** 47 Fed. Appx. 882, 890 (10th Cir. 2002). An individual who is not a member of a protected class may establish a violation of the Equal Protection Clause if he is injured by "intentional or purposeful discrimination." **Buckley Const. Inc. v. Shawnee Civic & Cultural Develop. Auth.,** 933 F.2d 853, 859 (10th Cir. 1991) **Vanderhurst v. Colorado Mountain College Dist.,** 16 F. Supp. 2d 1297, 1302 (D. Colo. 1998). This may appear on the face of the action taken with respect to a particular class or person, **cf. McFarland v. American Sugar Refining Co.**, 241 U.S. 79, 86-87 (1916), or it may only be shown by extrinsic evidence showing a discriminatory design to favor one individual or class over another not to be inferred

from the action itself, *Yick Wo v. Hopkins*, 118 U.S. 356, 373-374 (1886).  But a

discriminatory purpose is not presumed, *Tarrance v. State of Florida*, 188 U.S. 519,

520 (1903);  there must be a showing of "clear and intentional discrimination."

*Gundling v. City of Chicago*, 177 U.S. 183, 186 (1900).

    Here, Plaintiff claims that there were other properties near his that violated the

zoning ordinances of Adams county; yet, no warrant or other process was ever

obtained to enter those properties and remove the offending personal property.

*Compl.* ¶ 19.  However, rather than claiming that he was singled out for some

purposeful, discriminatory motive, Plaintiff merely claims Defendant's behavior is

"willful and wanton."  *Compl.* ¶ 23.  Plaintiff's allegation that Defendant's behavior was

"willful and wanton" does not sufficiently state a claim for an equal protection violation.

*See Snowden v. Hughes* 321 U.S. 1, 8 (1944) (finding that the lack of any allegations

in the complaint tending to show a purposeful discrimination between persons is not

supplied by the "opprobrious epithets 'willful' and 'malicious', or by characterizing that

Defendant's behavior as an unequal, unjust, and oppressive administration of the

laws.").  Therefore, Plaintiff's equal protection claim should be dismissed.


    C.    **Fourth Claim for Relief: Freedom of Speech:**

    Plaintiff argues in his Fourth Claim that Defendant violated his First

Amendment right to free speech.  Plaintiff alleges that during the cleanup of his

property pursuant to the Blight Ordinance and the executed warrant, the Defendant

removed "signs with political messages which Plaintiff used to attach to a pickup truck." **Compl. ¶ 9.** Plaintiff claims that the signs were stored in the backyard, were not visible from the street, and were not posted on his property for public viewing. **Id. ¶ ¶ 9-10.**

As Defendant notes, if the signs had been posted on his property, then they would be subject to Adams County's sign code and zoning regulations. Plaintiff did not have a sign permit, and did not otherwise properly post political signs in his yard. Plaintiff is not mounting a facial challenge against Adams County's sign code regulation. Defendant, therefore, argues that Plaintiff has no protected First Amendment free speech right in non-posted signs stored in his backyard. Defendant claims that she concluded that the signs were trash and debris that needed to be removed. Defendant claims that this "trash" was not something other than trash simply because it contained a political message.

The First Amendment provides: "Congress shall make no law ... abridging the freedom of speech, or of the press...". Under the Fourteenth Amendment, city ordinances are within the scope of this limitation on governmental authority. **Lovell v. Griffin**, 303 U.S. 444 (1938); **Members of City Council of City of Los Angeles v. Taxpayers for Vincent**, 466 U.S. 789, 792 (1984). There are two different ways in which a statute or ordinance may be considered invalid "on its face": either because it is unconstitutional in every conceivable application, or because it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally over-broad.

*Members of City Council of City of Los Angeles v. Taxpayers for Vincent,* 466 U.S.

789 (1984).  Plaintiff appears to attack the Ordinance on over-breadth grounds.

The mere fact that one can conceive of some impermissible applications of an

ordinance, such as the Blight Ordinance, is not sufficient to render it susceptible to an

over-breadth challenge.  *Id.*  A state may sometimes curtail speech when necessary

to advance a significant and legitimate state interest.  *Id.* at 804 (citing *Schenck v.*

*United States*, 249 U.S. 47, 52 (1919)).  Further, it is well settled that the state may

legitimately exercise its police powers to advance esthetic values.  *Id.* at 805.  In

*Berman v. Parker*, 348 U.S. 26, 32-33 (1954), in referring to the power of the

legislature to remove blighted housing, the Supreme Court observed that such

housing may be "an ugly sore, a blight on the community which robs it of charm,

which makes it a place from which men turn."  The Court concluded:   "The concept of

the public welfare is broad and inclusive. The values it represents are spiritual as well

as physical, aesthetic as well as monetary." *Id.*, at 33.

Here, it is within the constitutional power of the County to attempt to improve its

appearance, and this interest is basically unrelated to the suppression of ideas.  *See,*

*e.g., id.;  Kovacs v. Cooper*, 336 U.S. 77 (1949) (rejecting the notion that a city is

powerless to protect its citizens from unwanted exposure to certain methods of

expression which may legitimately be deemed a public nuisance). *See also,  Lehman*

*v. City of Shaker Heights*, 418 U.S. 298 (1974) (upholding the city's prohibition of

political advertising on its buses, stating that the city was entitled to protect unwilling

viewers against intrusive advertising that may interfere with the city's goal of making

its buses "rapid, convenient, pleasant, and inexpensive").  Municipalities have a

weighty, essentially esthetic interest in proscribing intrusive and unpleasant formats

for expression.  *Members of City Council of City of Los Angeles*, 466 U.S. at 805.

Having established that it is within the County's power to make esthetic

improvements, the court turns to the question whether the scope of the restriction on

Plaintiff's expressive activity is substantially broader than necessary to protect the

County's interest in eliminating visual clutter.  An incidental restriction on expression

which results from the County's attempt to accomplish such a purpose is considered

justified as a reasonable regulation of the time, place, or manner of expression if it is

narrowly tailored to serve that interest.  *Members of City Council of City of Los*

*Angeles*, 466 U.S. at 808.

Here, the Blight Ordinance does not affect any individual's freedom to exercise

the right to speak and to post signs on public or private property unless the exercise

results in blight, as was the case here.  Given that Plaintiff's signs were not posted in

any way, there is no indication that Plaintiff's right of speech has been curtailed by

Defendant's actions.  Defendant removed non-posted signs on private property.

Plaintiff admits that he typically posted the signs on his vehicle as a means of

expression.  He does not claim that he was using the signs laying in the backyard as

a form of expression.  Simply because an item may be used as a form of speech,

does not, in and of itself, implicate Plaintiff's First Amendment rights.  Plaintiff has

14

failed to state a claim for violation of his First Amendment rights.  Therefore, this claim should be dismissed.

    **D.**    **Fifth Claim for Relief: Outrageous Conduct:**

Defendant argues that Plaintiff's outrageous conduct claim[1] should be dismissed because it is barred by the Colorado Governmental Immunity Act ("CGIA"). Whether a public entity is immune from suit under the CGIA is a question of subject-matter jurisdiction.  *See Trinity Broadcasting of Denver, Inc. v. City of Westminster,* 848 P.2d 916, 923 (Colo. 1993).   It is Plaintiff's burden to demonstrate subject matter jurisdiction.  *See id.* at 924.  Public entities are immune from suit for "all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant. . .".  § **24-10-106, C.R.S.**  CGIA requires that written notice of intent to sue be given within 180 days of the discovery of the injury giving rise to the alleged tort claims.  § **24-10-109(1), C.R.S.**  Compliance with the required notice is a jurisdictional prerequisite and failure to comply "shall forever bar any such action."  § **24-10-109(1), C.R.S.**

In this case, Plaintiff's Fifth Claim asserts a tort claim for outrageous conduct. Plaintiff is complaining of activities that occurred on May 7, 2003.  *Compl.* ¶ 8.  Plaintiff

---

[1] In Colorado, "[t]he elements of outrageous conduct are: (1) the Defendant(s) engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the Plaintiff severe emotional distress, and (3) causing the Plaintiff severe emotional distress."  *Archer v. Farmer Bros. Co.,* 70 P.3d 495, 499 (Colo. Ct. App.2002).

claims the critical date on which he became aware of his injury is October 3, 2003, which is when "claimant discovered that the warrant . . . had been obtained upon false information." **Mtn. to Dismiss, Exh. 2, Notice of Suit.**   However, the basis of Plaintiff's outrageous conduct claim is not that the warrant was allegedly obtained on false information.  Rather, the gravamen of Plaintiff's claim is that Defendant "wrongfully deprived Plaintiff of his property and wrongfully destroyed or disposed of said property" and "the acts of the Defendant in taking the property of Plaintiff and depriving him of the same without cause constitutes outrageous conduct." ***Compl.*** ¶ ¶ **35 & 36.** The behavior of which Plaintiff complaints occurred on May 7, 2003.  Plaintiff does not provide any indication that he belatedly discovered Defendant's May 7, 2003, actions. Therefore, Plaintiff should have provided written notice of suit within 180 days from May 7, 2003, or by November 3, 2003, which fell on a Monday.

However, Plaintiff's Notice of Intent to Sue regarding this case was mailed to Defendant and Adams County on November 5, 2003, and was received by appropriate agencies on November 7, 2003.  Hence, the notice was provided over 180 days after the incident.  Plaintiff's failure to notify Defendant as required by CGIA is not considered excusable neglect on the part of a pro se litigant. ***See Deason v. Lewis,*** 706 P.2d 1283 (Colo. App. 1985).  Therefore, Plaintiff's Notice of Suit is deficient, and his outrageous conduct claim is jurisdictionally barred and should be dismissed pursuant to FED. R. CIV. **P. 12(b)(1).**

Accordingly,

**IT IS RECOMMENDED** as follows:

1.   That Defendant's Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1) and (6) [#4], filed on June 8, 2005, **BE GRANTED**;

2.   That Defendant's "Motion to Stay Discovery on Grounds of Governmental Immunity" [#5], filed on June 8, 2005, **BE DENIED AS MOOT;** and

3.   That this civil action **BE DISMISSED WITH PREJUDICE.**

IV.   **Advisement to the Parties.**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. **28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)**; *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made. **28 U.S.C. § 636(b)(1)**. A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. *See In re Griego*, 64 F.3d at 583; ***United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma***, 73 F.3d 1057, 1060 (10th Cir. 1996). The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. **28 U.S.C. § 636(b)(1)**.

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *One Parcel of Real Property*, 73 F.3d at 1060. Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, Plaintiffs waived their right to appeal the magistrate's ruling).

**DATED** at Denver, Colorado, this 8th day of August, 2005.

BY THE COURT:

s/Craig B. Shaffer
Craig B. Shaffer
United States Magistrate Judge